UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  02-60096-CR-DIMITROULEAS

UNITED STATES OF AMERICA,



     Plaintiff,

v.

IMRAN MANDHAI

     Defendant.

_____/

## OBJECTIONS TO
## PRESENTENCE INVESTIGATION REPORT AND
## RE-SENTENCING MEMORANDUM

### The Mandate of the Eleventh Circuit

This Court may resentence Defendant sentence without restriction, United States v. Stinson, 97 F. 3rd 466 (11th Cir. 1996), United States v. Zambrowski, 329 F. 3rd 1250 (11th Cir. 2003) because the appellate decision nullified the prior proceedings.

A criminal sentence is a package of sanctions the Trial Court uses to effectuate its sentencing intent consistent with the Guidelines, Stinson, supra, United States v. Yost, 185 F. 3rd 1178 (11th Cir. 1999). Since a vacated sentence is void in its entirety, the Trial Court is free to re-visit any of its initial rulings, Yost, supra, and reconstruct the sentence utilizing any sentencing components, Stinson, supra.

This Court is not bound by the findings of fact and conclusions of law of the Appellate Court, despite the law of the case doctrine since, among other



USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 2 of 25

considerations; (1) subsequent authorities have undermined the basis of the earlier decisions, or; (2) the prior decision was clearly erroneous and would work manifest injustice.

The recent Supreme Court decisions of <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004), and <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and a change in the application notes to the terrorist enhancement have substantially changed the law since Defendant was sentenced.

The Eleventh Circuit also found Defendant's sentence was unjust.

> "We agree with the District Court, however, that the twelve level increase to Mandhai's offense level required by the terrorism enhancement prevents the penalties from fitting the crime, based on the facts of this record."

The Panel specifically found that "on this record" a sentencing range of 188 to 235 months was excessive.

Accordingly, Defendant is entitled to a full re-sentencing.

### Testimonial hearsay

Defendant objects to the introduction of testimonial hearsay pursuant to <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004) especially where Defendant contests the accuracy of the hearsay. Defendant will note specific *Crawford* objections.

### The *Blakely* Objection

Defendant objects to the consideration by the Court for sentencing purposes of all facts other than those specifically alleged in the indictment and

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 3 of 25

admitted by Defendant, <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). Defendant will note specific *Blakely* objections as appropriate.

In <u>Blakely,</u> supra, the Supreme Court held that a judge lacks authority to impose a sentence dependent upon a fact not found by a jury or admitted via plea. This expanded the rule of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) by redefining the statutory maximum,

> "in other words, the relevant "statutory maximum" (quotations in original) is not the maximum  sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

Defendant specifically accepted from his plea the very conduct relied upon for the terrorism enhancement, his association with Hakki Aksoy and the Jihad training.

The sentencing range based upon Defendant's base offense level of 20 and criminal history level 1 is 33 to 41 months. If <u>Blakely</u>, supra, applies to the Federal guidelines (as predicted by the dissent and as seems logical) then any sentence in excess of the base or statutory minimum is illegal.

Defendant has not waived this argument. To be effective a waiver must be an intentional relinquishment or abandonment of a known right, <u>Johnson v. Zerbst</u>, 304 U.S. 458 (1938). The Court must indulge all reasonable presumptions against waivers of fundamental constitutional rights, <u>Johnson</u>, supra.  It is the government's burden to establish a valid waiver, <u>Michigan v. Jackson</u>, 475 U.S. 25 (1986).

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 4 of 25

Generally, litigants should benefit from Supreme Court decisions issued while their case is on direct appeal, even if the decision represents a clear departure from precedent, <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987).

Federal defendants have an additional right not possessed by State defendants such as Blakely, the right to a grand jury determination of probable cause as to each fact relevant to punishment and to have such facts charged in the indictment. In the post *Apprendi* Appeal of <u>United States v. Cotton</u>, 535 U.S. 625 (2002), the government conceded and the Supreme Court confirmed that it was plain error under *Apprendi* and the Fifth Amendment indictment clause to impose a sentence beyond the statutory maximum based upon facts not found by the grand jury and charged in the indictment

## Specific Objections

**Alias, Page 2:**          Mohammed Imran and Mohammed Mandhai are variations on Defendant's true name and are used interchangeably in Pakistan.

## The Offense Conduct

**Paragraph 5, Page 3:**          All comments attributed to Aksoy are inadmissible testimonial double or triple hearsay pursuant to <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004). Aksoy's comments regarding overseas travel to participate in a jihad are irrelevant to the instant case and suggest an attempt to demonize Defendant through his association with Aksoy. Such comments, used by B.O.P to set conditions of confinement, should be stricken as irrelevant and because Defendant's relationship with Aksoy was excepted by agreement during the plea colloquy.

Aksoy claimed that he killed two people to avenge the death of his father as a personal matter, not as part of "mujahadeen" activity (This comment should also be stricken),transcript of March 23, page 16, FBI 302 of 5/29/02 page 3, paragraph 6. Defendant and Aksoy twice went to a gun range and once to a show.  Defendant's discussions with Aksoy were never related to this case.

**Paragraph 7, Page 4:**   Again all testimonial hearsay attributed to non testifying witnesses is inadmissible hearsay, Crawford, supra.

All these comments are irrelevant as Defendant and the Government agreed at the change of plea that activities in connection with "jihad" were not relevant conduct.

Defendant adds that all references to jihad relate to possible overseas activities in the distant future.  Mandhai's training with Gilbert is overstated. Mandhai never received training in "Close Quarters Combat" or map reading. ( Map reading also suggests preparation for overseas activity.) He went to a pistol range two or three times and a rifle range once.  Training, according to Gilbert the instructor was for general preparedness and as a way to supplement his, Gilbert's, income.

Defendant adds that Gilbert stated, in a tape provided in discovery, that he had a dual agenda.  In addition to freelancing for our government, he was assisting the Israelis, thereby displaying a very personal motivation for his actions herein.   Gilbert, like religious fundamentalists of all persuasions, considered himself above the law. Gilbert prepared the initial plan and was attempting to convince Mandhai to participate, (FBI 302 of 3/29/01 page 2).

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 6 of 25

Gilbert's plan became the basis for the conspiracy and therefore for the Government contention that Defendant was a terrorist.

**Paragraph 9, Page 4:**   Defendant surmises that Gilbert's continued participation despite the orders of his FBI handlers as well as his disclosures to others relates to his stated desired to aid Israeli intelligence.

**Paragraph 10, Page 4:** The testimonial comments attributed to Mohammed are inadmissible, Crawford, supra. There was no transcript of this meeting.  Mohammed did not inform Defendant of the information relating to the Islamic resource center.  In later conversations Mohammed did refer to "the Brothers" as a source of financing from overseas.

At this meeting Defendant only questioned Mohammed as to why Mohammed had sought out Defendant at the mosque and asked Mohammed to meet the next day, March 10, 2001, to explain why.

**Paragraph 11, Page 5:** The testimonial hearsay of Gilbert and/or Mohammed are inadmissible pursuant to Crawford, supra. There is no transcript of the March 10, 2001, meeting.  Mandhai did not prepare the plan, Gilbert did.  Mandhai had no group and never told Mohammed that he, Mandhai, had a group.  (See transcript of March 13, page 69 & 67 in which Defendant states he has no group).  Mohammed explained at this meeting, that he, Mohammed, was a messenger from "Big Brother" for whom Mohammed worked.  Mohammed wanted Defendant to join Mohammed's group. Defendant refused, at which point Mohammed became upset and made a telephone call pretending to be speaking with a member of the group.   At that point

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 7 of 25

Defendant briefly mentioned Gilbert and Gilbert's plan.  This was repeated on March 13, discussed below, noted on page 66 of the transcript for March 13, wherein Defendant states to Mohammed that he (referring to Gilbert) told me this idea.

**Paragraph 12, Page 5:**  Defendant relies on the transcript of the meeting of March 13 to refute the allegations of Paragraph 12.  In page 4 thereof Gilbert is referred to as the leader.  Gilbert stated that he would do the training and planning.  It appears as if neither Mohammed nor Gilbert knew that the other was an informant at this time[1].  Mohammed, not Defendant, claimed that Mandhai was to handle recruiting; underscoring that there was no group yet.  Finally Mandhai denies asking Mohammed for $1,200 to $1,600 to obtain weapons at any time.  In support thereof Defendant notes (page 34 of the transcript) that Gilbert is responsible for the budget even as Mohammed is assigning roles.

Finally, on page 43, both informants, older and more experienced than Defendant, are relaying and re-enforcing credible threats in Defendant's presence.  The threats relate to death for everyone, including Defendant and his entire family, should the "mission" be betrayed.

**Paragraph 13, Page 5:**  Gilbert    provided    Mohammed    with    the photographs.  The transcript of this meeting (page 38, 40) refers to Gilbert

---

[1] The case agent falsely testified at the pre-trial detention hearing in this case that Gilbert was not a paid FBI informant.  The only explanation for such an otherwise blatant misrepresentation is that the case agent and Mohammed were working separate and apart from whomever in the FBI and/or the government was controlling or attempting to control

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 8 of 25

providing an entire package and having everything ready.   Gilbert took the photos on March 13, (see page 60-61) at Mohammed's request (page 40-41).

The handout on jihad was not for the mission and so  was excepted from the offense conduct at the plea colloquy.   Gilbert prepared the budget. Mandhai's participation in the preparation of the weapons and equipment list was only clerical.

**Paragraph 14, Page 6:**   Defendant did not understand the "cookbook" received from Gilbert, (see page 50 of transcript of March 13 and March 17, Page 28-29).   This book was legally and easily available. For example, Bob's Newstand, about ten blocks south of the Courthouse, usually had copies. Defendant also explains that Gilbert, not Defendant, created the training program, as a way to make money. Gilbert was to conduct all "training", Mohammed, who had no experience, was uninvolved. Only Gilbert's phone number was on the training flyer, corroborating that Defendant was not to be involved even in the scheduling of training. This also showed that Defendant did not recruit for training

**Paragraph 16, Page 6:**   Defendant did not regularly correspond with Aksoy. Aksoy wrote to Abdul Salam, a member of Darul Uloom's congregation. Salam published the letter to the congregation.  In response Defendant wrote Aksoy asking why he had been arrested.  Aksoy wrote back saying he had been arrested for illegal papers and an illegal gun.  Aksoy sent another letter that

---

Gilbert.  A logical inference from this is that neither Gilbert nor Mohammed initially knew that both were playing similar roles.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 9 of 25

Defendant never saw  because Defendant's father intercepted it.  (See FBI 302 of 5/29/02 page 2).

At the meeting of March 23, 2000, as set forth in the transcript, Defendant (page 2), referring to his decision to quit the mission, explains that it was Defendant's decision, not Gilbert's, as Mohammed had intimated. Defendant further explained (page 2) that Gilbert (Saif Allah) came to Defendant on Sunday to convince Defendant to stay in the mission. Mohammed disparages Gilbert as being in it only for the money, justifying the expulsion of Gilbert from the conspiracy (page 8).  Defendant again explained, on page 8, that he had no people.  Mohammed, understanding that Defendant, as he had been throughout his interaction with the informants, was still undecided about the mission, tries to manipulate Defendant to force him to commit (see page 8).

**Paragraph 17, Page 6:** The proposed jihad training was never related to the "mission" or any local action but was to strengthen the local Muslim community as per the plea colloquy. Mohammed continually pressured Defendant to complete the "mission" (See page 3 of transcript) of 3/27). Mohammed confronted Defendant about whether Defendant was really serious about carrying out the agreement (mission), again demonstrating Defendant's obvious lack of commitment as late as 3/27.

**Paragraph 18, Page 7:** Defendant never requested that Mohammed produce any weapons or explosives and was unaware that Mohammed was bringing any to the meeting.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 10 of 25

Defendant and Jokhan went to the gun shop to inquire about a gun for training, an activity accepted from the criminal activity to which Defendant pleaded guilty.

**Paragraph 19, Page 7:** All such testimonial hearsay is inadmissible pursuant to Crawford, supra. Defendant denies leading any private 30-minute meeting at the mosque relating to jihad.  Mohammed continually steered general conversations at the mosque such as the one to which this paragraph refers to discussions about fighting overseas.  In fact, Mohammed claimed to have been wounded in such overseas fighting.

**Paragraph 20, Page 7:** Defendant adds that he informed the others his father would never allow him to keep an AK47 or any weapon at his home. Defendant only wanted a legal weapon for training purposes (transcript of April 23, page 17).

**Paragraph 21, Page 7:** Defendant has yet to request any weapons for the mission.  Mohammed "like a leader" (page 10 of transcript of April 23, 2001) told Defendant that they should buy an illegal weapon because it would be too risky otherwise.  Mohammed continuously lobbied for illegal weapons. Defendant specifically explained that he was not even thinking about the mission when he was listening to Mohammed discuss weapons (page 16) as he had previously quit. Mohammed, who had previously praised Defendant as a leader, now belittles Defendant as an inexperienced 19 year old (page 21, 27) as part of his manipulation of Defendant.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 11 of 25

Finally, after repeated and continued pressure Defendant again agrees to do the mission (page 31 "I am ready" and page 32 "bring the stuff"). Mohammed, realizing, after months of effort, that he has successfully maneuvered Defendant into incriminating himself, is jubilant. (See page 34 of transcript, "we got it guys we got it … I just hope you were listening…").

**Paragraph 23, Page 8:** Defendant was in and out of this conspiracy. Similarly, although the possibility of civilian casualties was discussed if the mission were to ever take place, Defendant also stated (page 77) that "… we just concentrate on the transformers…" and that the point "of the exercise" was that no one be killed as the targets were the transformers and the armory.

Additionally Jokhan, who joined the conspiracy during this meeting, was recruited by Mohammed who "closed" the deal at this meeting. Defendant did not recruit Jokhan although he did bring him to the meeting.

**Paragraph 25, Page 9:** Final preparations were agreed upon. This meeting was to discuss Defendant's demand that he would not do the mission until Aksoy was bonded out of jail by Mohammed's group. In the mean time Jokhan appears to no longer be interested in the mission, (see page 16 of the transcript of April 30, 2001). During the meeting the shaky agreement totally falls apart. Defendant reiterates that he has no group (page 40), that he never called Mohammed back after previously quitting (page 27, 41) that Defendant "will not do the mission" (page 11), and wants nothing more to do with Mohammed["let's finish it, man" (page 43) referring to the relationship between Defendant and Mohammed]. In response Mohammed attempts to reel

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 12 of 25

Defendant and Co-Defendant back into the agreement (page 29, 30, 35, 36, 42, & 43).

**Paragraph 26, Page 9:** The testimonial hearsay recounted herein is inadmissible pursuant to Crawford, supra. Defendant does not recall asking for any bomb for immediate use at a final meeting. Defendant remembers going with Mohammed to "scout" transformers but is unclear as to the date. (There is no transcript for May 3). There are no tapes nor discovery documents corroborating this claimed meeting nor have either the dates or location of the meetings been alleged. Paragraph 26 recites only that these meetings occurred sometime after May 3, 2001.

**Paragraph 27, Page 9:** There are no transcripts of this call nor does Defendant recall receiving this call. This testimonial hearsay is inadmissible pursuant to Crawford, supra.

**Paragraph 28, Page 9:** Defendant notes, in response to that portion of the interview wherein Defendant "has no explanation for not calling law enforcement", that he mentioned the threats disclosed in the response to paragraph 12 hereof, contained in the transcript of March 13, page 43.

**Paragraph 29, Page 10:** As stated in the response to paragraph 13 above, Gilbert initiated the plan and provided all information.

**Paragraph 31, Page 10:** The reference to jihad was a general reference referring to possible overseas actions with Jokhan.

**Paragraph 32, Page 11:** Defendant denies discussing any jihad with Jokhan against America, except as to discussing Gilbert's plan in

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 13 of 25

Mohammed's presence.   Defendant adds that Jokhan did not claim, in June 2001 (before his plea bargain) that he, Jokhan, was recruited by Defendant.

**Paragraph 33, Page 11:**        Defendant denies recruiting or attempting to recruit anyone for the crime or for jihad in America.   Defendant did accompany Gilbert when Gilbert went to two other mosques to post flyers for his, Gilbert's, training classes.  Defendant did not train with Gilbert for jihad in the United States or for the mission.   The Defendant knew that he would not be allowed to keep an AK 47 in his house against his father's wishes.  Finally Defendant and Co-Defendant withdrew from the mission before Mohammed left town.

### Role Assessment

**Paragraph 34, Page 12:**        Defendant did not solely recruit Jokhan for the mission. Defendant did not supervise or control Jokhan with regard to training. Jokhan was the only co-conspirator not a Government agent or employee.   Defendant can not receive a two level adjustment for a leadership role in this two man conspiracy, <u>United States v. Yeager</u>, 331 F. 3rd 1216 (11th Cir. 2003), decided after the initial sentencing, as Defendant did not take primary responsibility for any distinct component of the plan, nor did Defendant control or influence Jokhan with respect to that distinct component of the plan.   Accordingly Defendant cannot be assessed a leadership enhancement.

Defendant did not attempt to secure financial backing for the conspiracy (Mohammed explained numerous times that money was not a problem) nor did

Defendant choose a target or time for the potential attacks. Jokhan however did select a target. Defendant had no experience, access to money, training, equipment or explosives. Defendant's conduct does not warrant a two level increase as an organizer especially where his "recruit", the only non Government coconspirator, had only a minor role.

## **Offense Level Computation**

### **Paragraph 40, Page 13, Specific Offense Characteristics:** The

Appellate Court, during oral argument, clearly noted that

> "although Defendant talked the talk he would never walk the walk."

This guideline allows a three-point reduction for an unsuccessful conspiracy or attempt. Defendant pled to a conspiracy to attempt arson from which he withdrew well before completion.

### **Paragraph 41, Page 13:**        **Victim related Adjustment:**

The Defendant objects to this draconian enhancement. Defendant's guide line range and corresponding sentence, but for this enhancement, was as follows:

| | |
|---|---|
| Base Offense Level | <u>20</u> |
| Organizer enhancement | <u>+2</u> |
| Acceptance of responsibility | <u>-3</u> |
| Range 30 to 37 months (Cr.Hrst I) | 19 |

The sentencing range after the terrorist enhancement and acceptance of responsibility, is 188 – 235 months. John Walker Lindh, who fought on the

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 15 of 25

ground with the Taliban against American soldiers, received a 240 month sentence pursuant to plea. Defendant adds that one of the "worst of the worst", Hamdi, an enemy combatant secreted at Guantanamo after capture on the battlefield, was released without any charges ever being filed when the Government could not produce any evidence justifying its actions pursuant to his recent Supreme Court opinion. When terrorism is claimed to be afoot it appears that the Government feels unrestrained by any rules or basic fairness.

### A.    The *Blakely* Objection

Defendant objects to this enhancement based on <u>Blakely</u>, supra. Defendant specifically excepted from his plea the very conduct alleged as the basis for this enhancement, his association with Aksoy and 'jihad' training. In addition there were no specific allegations of terrorism contained in the indictment.

### B.   The Charged Offense is not a Federal Crime of Terrorism

Pursuant to USSG § 3A1.4 the terrorist enhancement applies to a federal crime of terrorism as defined in 18 USC § 2332 b(g)(5). The crime to which Defendant pled guilty, conspiracy to attempt arson, is a violation of 18 USC § 1844 (n). This crime is not defined as a federal crime of terrorism in 18 USC § 2332 (b)(g)(5) so that the enhancement predicated upon the statute can not apply, <u>United States v. Arnaout</u>, 282 F. Supp. 2d 838, (N.Dist. of IL Eastern Division 2003).

The Sentencing Commission is not a legislative body and does not have the authority to pre-empt Congress, <u>United States v. LaVonte</u>, 520 U.S. 751

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 16 of 25

(1997). (In fact one ground for upholding the guidelines in the face of a separation of powers argument was that the sentencing commission is an arm of the Judicial branch for which sentencing is a traditional duty.)  Application Note 1 of U.S.S.G § 3A1.4 was amended shortly after Defendant was sentenced. A Federal crime of terrorism "for purposes of this guideline" is now defined as stated in 18 U.S.C § 2332 b(g)(5). In fact the Appellate Court specifically stated (page 8) that "had the Guideline drafters intended that Section 3A1.4 apply only where the defendant is convicted of a crime listed in18 U.S.C § 2332 b(g)(5)(B) they would have included such limited language."

Application Note 1 now specifically incorporates the specific statutory definition of a crime of terrorism as its definition, which does not include the crime of conviction. At worst, the note makes this guideline ambiguous. Pursuant to the rule of lenity such ambiguity is to be resolved in favor of Defendant.

However, application Note 4, USSG § 3A1.4, states that the mandatory adjustment required by th terrorism adjustment applies only to federal crimes of terrorism, supporting Defendant's argument. Terror related crimes, as opposed to crimes of terror as defined, (any offense calculated to influence or affect the conduct of government by intimidation or coercion or related to one of the offenses specifically enumerated in 18 USC § 2332 (b)(g)(5)(B) if the motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion) are a basis for a limited but not mandatory upward departure.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 17 of 25

Defendant's crime does not qualify him for the mandatory upward departure to level 32, crime history VI, as the application notes create a distinction between a specific federal crime of terrorism (Note 1) and a non delineated but related crime (Note 4), such as the crime of conviction.

### C. The Terrorist Enhancement Can Not Be Applied Because it is Based Upon Speculation Upon Speculation

In the instant case the viability of a terrorist enhancement is based upon speculation upon speculation upon speculation.   First and foremost; Defendant withdrew from this offense numerous times.  Second; the subject of the agreement was to <u>attempt</u> to commit arson.  Third; there was no chance that any arson could have ever occurred.  Fourth; the Defendant had no access to money, equipment, training or experienced coconspirators.   Fifth; the Defendants had wavered both as to their commitment to "the mission" and the targets for "the mission" calling their future intent into doubt.  Sixth; there is nothing by which the effectiveness or success of the mission can be determined, i.e., whether or not civilian populations would be disrupted so that chaos would ensure.   Seventh; there is no calculus by which one can determine, based on the above, if Defendant would have ever attempted to make demands on Government Policy.   In short Defendant's action was insufficient to divine his true intent. The FBI didn't arrest Defendant for almost a year after meeting with him, clearly demonstrating that it didn't consider him a threat to act.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 18 of 25

### D. **The Government's Conduct Precludes the Application of the Terrorist Enhancement**

Although not rising to the level of a complete defense, the conduct of the Government in this case was sufficiently outrageous; constituted sentencing factor manipulation and sentencing entrapment such that this enhancement should not be applied.

The defense of outrageous government conduct focuses on whether the Government's methods comport with the Fifth Amendment guarantee of due process, United States v. Russell, 411 U.S. 423 (1973); United States v. Sanchez, 138 F. 3rd 1410 (11th Cir. 1998).

Sentencing factor manipulation focuses on the Government's conduct. Sentencing entrapment focuses on a defendant's predisposition. In United States v. Govan, 293 F. 3rd 1248 (11th Cir. 2002) the Court did not rule out sentencing manipulation but instead determined that the facts before it did not support such a claim. Defendant therefore submits that sentencing factor manipulation is a viable defense in this Circuit and is applicable because of the facts in this case.

Subsequent to *Apprendi* the Circuit reconsidered sentencing entrapment in United States v. Ryan , 289 F. 3rd 1339 (11th Cir. 2002), simply stating that, under the facts presented to it, such a defense was not applicable. Defendant submits that sentencing entrapment under *Appends*, even ignoring *Blakely,* is now a viable defense. Adding *Blakely* to the mix only strengthens Defendant's claim.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 19 of 25

A defendant's initial burden re: entrapment is to show that the Government induced the defendant to act by means of persuasion or mild coercion, coupled with excess pressure or manipulation of a non-criminal motive. Sufficient coercion may be shown if a defendant demonstrates he had not favorably received the Government plan so that the Government had to push it on him, or that several attempts in setting up an illicit deal had failed or on at least one occasion he had directly refused to participate, <u>Ryan</u>, supra.

The acts of the Government in this case clearly support one or all of the above although not to the extent necessary to rise to a complete defense. Defendant clearly refused numerous Government invitations to participate. Defendant, as recognized by the Eleventh Circuit, flip-flopped, moving in and out of the conspiracy. Defendant was clearly manipulated using the non-criminal motive of securing him a position at the highly exclusive Islamic religious school in Medinah and alternatively appealing to his manhood then denigrating him as an immature teenager. Defendant had no weapons, access to weapons, training or experience. Defendant repeatedly walked away and was repeatedly re-contacted by the Government agents. Defendant never took any steps on his own to effectuate the object of the conspiracy.

In considering sentencing factor manipulation, one must determine if the government  manipulation, beven if insufficient to support an entrapment defense or due process claim, must still be filtered out of the sentencing calculus, <u>Sanchez</u>, supra, <u>United States v. Connell</u>, 960 F. 2nd 191 (1st Cir. 1992). The <u>Sanchez</u> court determined, without concluding there was no such

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 20 of 25

defense, that the facts before it did not justify its application. In contrast, the facts herein do support such a sentencing defense.

### **Paragraph 42, Page 13:**       **Adjustment for Role in the Offense:**

Defendant objects to this enhancement pursuant to <u>Blakely</u>, supra. The Defendant was not an organizer in this conspiracy.   The first informant, Gilbert, developed the plan.  The second informant, Mohammed, was to provide the skills to make the necessary devices, the equipment and material for the devices and the funding for any operation.   Although Defendant is alleged to have recruited his co-defendant, there was no group or any possible way that Defendant made any leadership decision with regard to the non existent organization or the mission. Mohammed keyed the time of the mission to his preparation of the bombs. Recruitment of one man for a two man conspiracy, without more, is just not enough.

Additionally the undersigned erroneously informed the Defendant that an adjustment for role in the offense as an organizer or leader would be subsumed or trumped by the adjustment for terrorism.   The undersigned and the prosecutor discussed the proposed plea agreement based on the guide lines computations of level 29, criminal history VI, sentence 151- 188 months, which can only be achieved if this objection is sustained.

### **Paragraph 47, Page 13:**       **Total Offense Level:**

Defendant's total offense level is as follows:

| | |
|---|---|
| All objections granted | Level 14 |
| Objections RE: Leadership Role | Level 29 |

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 21 of 25

Only adjustment for acceptance of responsibility granted      Level 31

**Paragraph 50, Page 13:**      **Criminal History Computation:**

If Defendant's objections to the terrorist adjustment are granted then Defendant's criminal history category is I.

**Paragraph 84, Page 19:**      **Guideline Provisions**

The Defendant's guidelines sentencing range is as follows:

a.   All objections granted, Level 14 criminal history I,      15-21 months;

b.   Objections as to role granted, Offense Level 29, Criminal History Category VI,      151-188 months;

c.   No objections granted, with acceptance of responsibility   Level 31 criminal history VI,      210-240(262) months.

**Request for Downward Departure**

The terrorist enhancement herein results in a sentence that is far too harsh for Defendant's offense conduct, criminal history and ascertainable intent in light of the facts and the law.

**Facts**

Defendant voluntarily withdrew from the conspiracy to attempt to commit arson on numerous occasions. Defendant was 18 and 19 years old at the time of the offense and was utterly without the capabilities, either personally, financially, or by virtue of his experience and temperament, to ever complete any conspiratorial goal. The guidelines contemplate that a conspiracy or attempt should be punished just as the substantive crime. To do so in this case would be a grave injustice and a violation of substantive due process.

The government was heavily involved in the creation of this crime, and indeed orchestrated all of its "sexy" attributes.  At one point prosecution was declined because it was determined that Defendant was entrapped. Defendant was also the recipient not so subtle death threats to him and his family (meeting of March 13, pg 43).  Defendant is significantly less culpable than the "average terrorist."

### Specific Grounds for Departure
### Criminal History

The Court may implement a downward departure by restructuring the Defendant's guidelines level and/or his criminal history.  But for the enhancement the Defendant would be criminal history I, as he has no prior arrests or involvement with law enforcement of any kind.  There is no criminal history. Criminal history category VI significantly over represents the Defendant's criminal history and the inferences drawn therefrom of recidivism and dangerousness. A departure from criminal history VI is appropriate and lawful, United States v. Maskini, 319 F. 3rd 88 (2nd Cir. 2003).

### Duress

Both Government agents made death threats about people like Defendant and his family in Defendant's presence should Defendant fail to follow thru on the informants' plan. Duress, even if insufficient to provide a complete defense may support a downward departure.

### Sentencing entrapment

Defendant is a victim of sentencing entrapment which, post *Apprendi*, has new validity in this Circuit.

### Sentencing enhancement

Defendant is clearly the victim of sentencing enhancement. But for the agents' manipulation of Defendant the conduct to which Defendant admitted would not justify a terrorist enhancement because the crime must be aimed at disruption of the Government. This is particularly true in the instant case because Defendant's crime of conviction is not one specifically delineated as a crime requiring the mandatory terrorist enhancement.

### Due process violation

The conduct of the Government was so outrageous that Defendant's sentence should be reduced. Defendant was the subject of not one but two carefully orchestrated schemes to entrap him into becoming a terrorist by not one, but two, Government agents. Defendant was young and inexperienced and therefore was easy prey for these sophisticated and well schooled Government agents. Gilbert was in fact a double agent and was so skilled that he not only was able to "play" Defendant but was able to "play" and ignore his FBI and other Government handlers. He was either a rogue agent or an uncharged coconspirator. He has since been arrested.

### First Amendment and Freedom of Association

Gilbert spoke to Defendant's mosque to line up targets. This infringed upon Defendant's First Amendment rights of free speech and free association.

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 24 of 25

The First Amendment restricts the ability of the State to impose liability on an individual solely because of his association with others, <u>NAACP v. Claiborne Hardware Company</u>, 458 U.S. 886, (1982), <u>Scales v. United States</u>, 367 U.S. 203, (1961). The First Amendment prohibits punishing an individual for mere membership in an organization even if the organization has both legal and illegal goals. The Government may not prohibit mere association.

Although not rising to the level of a complete defense, Defendant's association with others in his mosque, or with Aksoy or his co-defendant, may not be prosecuted, even if one concedes, for purposes of argument, that his associations had both legal and illegal goals. Given the heavy lifting that the Government agents had to do in order to ensnare Defendant and shift his conduct from legal association to illegal promotion of unlawful goals this should be grounds for a downward departure.

### § 5 K 2.0

Guidelines permits Courts to impose a sentence outside the applicable guideline range where there exists aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. The Court must determine whether any factor makes the case atypical, taking it out of the "heartland" of cases involving the conduct described in the applicable guideline and whether that factor should result in a different sentence, United <u>States V. Kapelushnik</u>, 306 F. 3rd 1090 (11th Cir. 2002).

USA vs. Mandhai
Case No. 02-60096-CR-DIMITROULEAS
Page 25 of 25

The Eleventh Circuit remanded this case because the sentence did not fit the facts. This case is clearly outside of the heartland of arson cases, conspiracy to attempt to commit arson cases and terrorism cases. Any or all of the above cited reasons are grounds for this Court to depart downward.

WHEREFORE the Defendant requests that this Court grant his objections, and requests for a Downward Departure and sentence him in a manner appropriate to the facts of this case.

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed/mailed to AUSA Jeff Sloman, 99 N.E. 4th Street, Miami, Fl 33132 and to USPO Donald Jefferson, 299 E. Broward Blvd, Room 409, Ft. Lauderdale, FL 33301-1168 on this _15_ day of October, 2004.

DeFABIO and FENN, P.A.
Attorneys for Defendant Mandhai
2121 Ponce de Leon Blvd., S-430
Coral Gables, Florida 33134
(305) 448-7200/444-0913

By:_____
LEONARD P. FENN, ESQUIRE
F.B.N. 237337